**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM GROUP INC,

                Plaintiff,

v.

NOLUVA, et al.,

                Defendants.

Civil Action No. 25-cv-00708

Hon. William S. Stickman IV

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT AND  PERMANENT INJUNCTION**

Plaintiff POM Group, Inc., ("Plaintiff") submits this Memorandum in Support of its Motion for Default Judgment pursuant to Fed. R. Civ. P. 55 (b)(2) seeking entry of Judgment against the defaulting Defendants[1] ("Defaulting Defendants") on Count I and Count II of the Complaint. Plaintiff is also requesting the Court for an Order authorizing the release and transfer of frozen assets.

**INTRODUCTION**

By choosing not to participate in this case, Defaulting Defendants have failed to produce any documents or information: (1) identifying each and every online marketplace account and/or financial account used by Defaulting Defendants, including the owner(s) and/or operator(s) of each online marketplace; (2) showing costs, cost allocations, revenues, and profits of Defaulting Defendants for the last five (5) years; or (3) relating to each and every purchase that Defaulting Defendants have made relating to the Plaintiff's Design and/or the Infringing Products, including records of the products purchased, the sale prices, images of the products, records of suppliers and

---

[1] Defendant Gainbliss (Doe 8) filed an answer and has been excepted from this request for Default Judgment.

1

manufacturers of the products, records of steps taken by Defaulting Defendants to determine whether such products were new or genuine, and records of investigation notes regarding purchase of the products, including the identity of the person(s) responsible for such investigation.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiff now moves this Court for an Order entering default and default judgment and finding Defaulting Defendants liable on Plaintiff's patent infringement claim. Plaintiff seeks an award of monetary damages in the amount of $3,926,795.86, which represents the sales record provided by third party institutions. Alternatively, Plaintiff further requests that the Court exercise its discretion to award enhanced damages of $11,780,387.58 jointly and severally against the Defaulting Defendants. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from making, using, offering for sale, selling, and importing products embodying Plaintiff's U.S. Patent No. 11,433, 195 B2 (the "'195 Patent") and United States Design Patent D840,529 S (the "529 Design Patent") (collectively, the "Asserted Patents"); and requiring that all assets in Defaulting Defendants' financial accounts operated by PayPal and others, as well as any newly discovered assets, be transferred to Plaintiff, up to and including, but not to exceed, the amount of relief awarded by the Court.

There are no disputed issues of fact remaining in this suit, and a default judgment should be entered against Defaulting Defendants providing for permanent injunctive relief, a damage award of $3,926,795.86 [2] jointly and severally against Defaulting Defendants, arising from Defaulting Defendants' sales of products infringing the Asserted Patent[3], a post-judgment asset

---

[2] Plaintiff requests that the Court award enhanced damages of $11,780,387.58, which represents three times of Plaintiff's actual damages jointly and severally against Defaulting Defendants.
[3] See Exhibit 1 to the Declaration of Michael Mitchell for the calculation of damages obtained from various financial institutions including PayPal and Stripe.

restraining order, and an order authorizing the release and transfer of Defaulting Defendants' assets to Plaintiff in an amount sufficient to satisfy any monetary judgment that the Court may see fit to enter. This award and the method for calculating it is consistent with other awards made for admitted intentional patent infringement in the Western District of Pennsylvania. *See Aquapaw LLC v. Allnice*, No. 20-cv-01954 (W.D. Pa. Jul. 29, 2022) (Wiegand, J.); *Doggie Dental, Inc. v AVANTDIGITAL,* No. 21-cv-271 (W.D. Pa., February 23, 2022) (Hornak, CJ); *Doggie Dental, Inc. v CDOFFICE,* No. 21-cv-565 (W.D. Pa., February 23, 2022) (Hornak, CJ); *Doggie Dental, Inc. v Ahui, et al.*, No. 19-cv-1627 (W.D. Pa., Sept. 27, 2021 (Hornak, CJ).

## <u>ARGUMENT</u>

### I.    FACTUAL BACKGROUND

Plaintiff markets and sells breathing tubes uniquely designed to assist its users in stress relief, and relaxation. ("Plaintiff's Products"). (Dkt. 2 "Complaint"). The design of Plaintiff's Product is claimed in Plaintiff's Asserted Patents. *Id.* Plaintiff's Products have enjoyed enormous success, which has led to significant infringement of Plaintiff's patent rights. *Id.* at 42.

Defaulting Defendants are individuals and business entities who reside in the People's Republic of China and other foreign jurisdictions. Complaint ¶ 38. Defaulting Defendants trade upon Plaintiff's reputation and goodwill by selling and offering for sale unauthorized, unlicensed, and infringing items bearing and utilizing Plaintiff's Asserted Patents (the "Infringing Products") by operating e-commerce stores using their respective store names and seller names set forth on Schedule A (collectively, the "Seller IDs"). Complaint ¶¶ 38-39.

Plaintiff has obtained screenshot evidence showing each Seller ID on Schedule A selling Infringing Products to addresses within Pennsylvania. *See* Complaint, Exhibit 5.

On May 22, 2025, Plaintiff filed a complaint for patent infringement. Dkt. 2. On May 27, 2025, the Court ordered that the Defendants be served electronically. Dkt. 19. Service was effectuated on June 17, 2025. Dkt. 34. On June 25, 2025, the Court entered a preliminary injunction against all Defendants. Dkt. 40. On September 9, 2025, the Clerk entered default against Defaulting Defendants for failure to plead or otherwise defend. Dkt. 54[4].

## II.      JURISDICTION AND VENUE ARE PROPER IN THIS COURT.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 101, *et seq.*, and pursuant to 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defaulting Defendants because Pennsylvania authorizes personal jurisdiction over each Defaulting Defendant pursuant to 42 Pa. Cons. Stat.§ 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution,

---

[4] Defendant Gainbliss (Doe 8) filed an answer and was excepted from the Clerk's entry of Default.

or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

This Court has jurisdiction to grant Plaintiff's motion and enter default judgment against Defaulting Defendants because the Court has subject matter jurisdiction over this action as well as personal jurisdiction over the Defaulting Defendants. This Court has subject matter jurisdiction over this action pursuant to the Patent Act, 35 U.S.C. § 271, 28 U.S.C. § 1338(a), and The All Writs Act, 28 U.S.C. § 1651(a).

Personal jurisdiction may be established either by specific or general jurisdiction, but specific jurisdiction is appropriate in this case because of Defaulting Defendants' contact with the forum. *See* 42 P. A. Cons. Stat. § 5322. The factors to consider when establishing specific jurisdiction are: "(1) the extent to which defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the Plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *See IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3rd Cir.1998). Defaulting Defendants satisfy each of the factors to establish specific personal jurisdiction. Likewise, Venue is proper pursuant 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

Through systematic and continuous operation of fully interactive commercial Internet websites and online marketplace accounts, Defaulting Defendants have targeted sales from U.S. residents, including Pennsylvania residents, by operating, or assisting in the operation of, one or more commercial, interactive e-commerce stores that sell products directly to Pennsylvania consumers that directly infringes on Plaintiff's federally registered Asserted Patent. Dkt. 2 ¶ 16. Thus, personal jurisdiction is proper because Defaulting Defendants are committing tortious acts in the U.S., including in Pennsylvania specifically, are engaging in interstate commerce, and have

wrongfully caused Plaintiff substantial and irreparable injury, including lost profits, market share erosion, and reputational damage, in the U.S. and in the Commonwealth of Pennsylvania specifically. *Id*. This targeting of Pennsylvania residents provides ample grounds for the Court exercising jurisdiction over Defaulting Defendants. Lastly, this Court's exercise of specific personal jurisdiction over Defaulting Defendants is "reasonable" under the Constitution. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

III.     **PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT.**

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). On May 22, 2025, Plaintiff filed its Complaint asserting a claim for patent infringement. The Defaulting Defendants were properly served on June 17, 2025. (Dkt. 34). The last day to file an answer was July 8, 2025. Despite having been served with process, the Defaulting Defendants have failed to plead or otherwise defend this action.[5] Accordingly, the Clerk of Court has entered default judgment against the Defaulting Defendants.

### A.  Entry of Default Judgment is Required Here.

The entry of a default judgment under Federal Rule of Civil Procedure 55 is a two-step process. First, the Clerk of Court must enter default against a party that "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Clerk of Court entered default against Defaulting Defendants on September 19, 2025. After entry of default, the party seeking default judgment must apply to the court for the entry of default

---

[5] Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces.

judgment if the relief sought is not for a "sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b). "A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

After default is entered by the clerk, the Court must decide whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (citation omitted). If the complaint establishes a cause of action, the court then considers three factors to determine if default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

The deadline by which Defaulting Defendants were required to serve their responsive pleading has passed and no answer or other responsive pleading has been filed by any of the Defaulting Defendants. *See* Fed.R.Civ.P. 12(a)(1)(A). Accordingly, default judgment is appropriate. Further, Plaintiff requests awards of monetary damages against each of the Defaulting Defendants for patent infringement as authorized by 35 U.S.C § 289 for Defaulting Defendants' unauthorized, infringing manufacture, use, offering for sale, sale, and importation of products embodying a design that infringes Plaintiff's Asserted Patents. Plaintiff also seeks entry of a permanent injunction under 35 U.S.C. § 283, which is warranted because: (1) Plaintiff has suffered irreparable injury; (2) remedies available at law are inadequate to compensate for the injury; (3) considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). Specifically, Plaintiff requests that

7

Defaulting Defendants be prohibited from selling the Infringing Products and from making, using, offering for sale, selling, and importing products embodying the designs claimed in Plaintiff's Asserted Patents. Additionally, to ensure effective enforcement, Plaintiff requests that the e-commerce stores, website domains, and online marketplaces used by Defaulting Defendants to sell the Infringing Products be permanently transferred to Plaintiff, and that all assets in Defaulting Defendants' financial accounts be transferred to Plaintiff up to the amount of the total relief awarded.

**B. Plaintiff Is Entitled to Judgment as a Matter of Law on their Design Patent Infringement Claim**

"A design patent protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent." *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993). Design patent infringement analysis is governed by the "ordinary observer" test, which has been articulated as follows: "[If] in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive an ordinary observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Amini Innovation Corp. v. Anthony California, Inc.*, 211 F. App'x 988, 2007 WL 43262, at **2 (Fed. Cir. Jan. 8, 2007). Further, design patent infringement requires that the accused design misappropriate the novel ornamental features of the patented design that distinguish it from the prior art. *Oakley, Inc. v. Int'l Tropic–Cal, Inc.*, 923 F.2d 167, 169 (Fed. Cir. 1991).

Defaulting Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe Plaintiff's Design Patent. (Dkt. 2). In the eye of an ordinary observer, the design of Defaulting Defendants' Infringing Products and the designs claimed in the Design Patent are substantially the same; indeed, they are virtually identical. (*Id.* at 43).

8

The similarity of the design of Defaulting Defendants' Infringing Products as compared to Plaintiff's Design Patent deceives prospective purchasers and induces them to purchase Defaulting Defendants' products supposing them to have originated from Plaintiff. Defaulting Defendants' Infringing Products misappropriate the novelty of the design claimed in Plaintiff's design patent that distinguished Plaintiff's patented design from the prior art. (*Id.* at 51). Defaulting Defendants sell, offer for sale, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the ornamental design and claims claimed in the Design Patent. (*Id.* at 67).

Finally, the  Design Patent is presumed valid. *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998). This presumption applies at every stage of litigation. *Canon Computer Sys.*, 134 F.3d at 1088. No party has to date challenged the validity of the Asserted Patents.

### C.    Plaintiff Is Entitled to Judgment as a Matter of Law on their Utility Patent Infringement Claim.

A patentee needs to prove that a patent infringer, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States and patent invention during the term of the patent thereof." 35 U.S.C. § 271(a). "A determination of infringement is a two-step process. The court must (1) construe the asserted claims and then (2) compare the properly construed claims to the allegedly infringing devices." *Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1335 (Fed. Cir. 2005) (citations omitted). When comparing utility patent claims to an accused product, a patent owner must prove that "the accused device contains each limitation of the asserted claim, or an equivalent of each limitation." *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1334 (Fed. Cir. 2003) (citations omitted).

All of the terms in the claims of Plaintiff's '195 Patent must be construed according to the definitions provided by the patentee in the specification, or if not explicitly defined, according to the ordinary meanings as understood by a person having ordinary skill in the art. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

Here, claim 1 covers the following elements:

1. A breathing device in a form of jewelry consisting essentially of:

an elongated tube having a length of 30 to 75 millimeters from a first end to a second end;

defining a central chamber having a uniform diameter of 3 to 6 millimeters throughout the length of the elongated tube;

an opening on the first end of the elongated tube constructed to be inserted into a user's mouth;

an exit on the second end of the elongated tube;

a securing structure connected to the elongated tube;

the securing structure comprises a necklace or bracelet is configured to secure the elongated tube on the user as jewelry;

wherein the length and the diameter of the elongated tube are being constructed to restrict an exhaled breath of a user to slow breathing of the user to a desired breathing rate.

As established in the evidence before the Court, the Infringing Products infringe at least claim 1 of the '195 Patent. Plaintiff is likely to succeed on its claims that Defendants infringe the '195 Patent. See Exhibit 1 to Preliminary Injunction, Dkt. 36-1.

### D.    The Chamberlain Factors Weigh in Favor of Entry of Default Judgment.

As Plaintiff has established that it has pled a meritorious case for patent infringement, the Court must now determine whether default judgment should be granted.

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

Here, all three factors weigh in favor of entering a default judgment in favor of Plaintiff and against Defaulting Defendants.

As to the first factor, Plaintiff would be substantially prejudiced if default judgment were not entered. This is a case of systematic and willful infringement causing substantial harm to Plaintiff's business. Specifically, Plaintiff has demonstrated that Defaulting Defendants have serially infringed its intellectual property. Furthermore, Defaulting Defendants were provided actual notice of these proceedings, yet have willfully chosen not to participate. *See* Dkt. 34. If default judgment is not entered, Plaintiff would be deprived of any remedy against Defaulting Defendants and future infringers would be incentivized to simply ignore judicial proceedings as a means to avoid accountability.

Thus, the first *Chamberlain* factor weighs in favor of entering a default judgment in favor of Plaintiff.

As to the second factor, Defaulting Defendants do not have a litigable defense. Plaintiff has established that it never granted Defaulting Defendants permission to use the Asserted Patents. *See* Complaint ¶¶6-8. Additionally, Plaintiff has included direct proof of Defaulting Defendant's infringing conduct in the form of screenshots which conclusively demonstrates Defaulting Defendants' liability. *See* Complaint, Exhibit 3. Thus, Defaulting Defendants do not appear to have a litigable defense.

11

Thus, the second *Chamberlain* factor weighs in favor of entering a default judgment in favor of Plaintiff.

As to the third factor, the evidence clearly demonstrates that Defaulting Defendants' delay was due to their own culpable conduct. Pursuant to the Court's order, Plaintiff served Defaulting Defendants electronically with copies of the Summons and Complaint. Dkt. 34. Defaulting Defendants chose not to participate in this lawsuit despite having actual knowledge of the suit and the relevant response deadline, rendering their conduct culpable.

Thus, the third *Chamberlain* factor weighs in favor of entering a default judgment in favor of Plaintiff.

In conclusion, all three *Chamberlain* factors weigh in favor of entry of default judgment against Defaulting Defendants. Plaintiff would be prejudiced if default judgment is not entered because Plaintiff would be deprived of a remedy for Defaulting Defendants' infringing conduct. Defaulting Defendants do not have a litigable defense. Additionally, the evidence shows that Defaulting Defendants are culpable for failing to participate in these proceedings.

Therefore, default judgment should be entered against Defaulting Defendants and in favor of Plaintiff for Plaintiff's claims of design and utility patent infringement.

## IV. PLAINTIFF IS ENTITLED TO MONETARY DAMAGES AND INJUNCTIVE RELIEF.

### A. Plaintiff is Entitled to an Award of Monetary Damages Pursuant to 35 U.S.C. § 289.

Upon a finding of patent infringement, a plaintiff may elect between pursuing damages pursuant to 35 U.S.C. §284, which is the damages provision of the Patent Act applicable to patent infringement generally; or, alternatively, damages pursuant to 35 U.S.C. § 289, which is a separate damages provision applicable exclusively to design patent cases. 35 U.S.C. § 284 provides for the

recovery of damages amounting to no less than "a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. When the damages are not found by a jury, the court shall assess them." 35 U.S.C. § 289 alternatively provides for an award of the infringer's profits generated through sales of the infringing items. Specifically, Section 289 states, in pertinent part, as follows:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

35 U.S.C. § 289. Plaintiffs who have prevailed on a design patent infringement claim, moreover, need only demonstrate a defendant's total revenue generated through sales of the infringing product, after which the burden shifts to the defendant to establish deductible expenses. *See Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*, 250 F. Supp. 2d 333, 340-41 (S.D.N.Y. 2003), 90 F. App'x 543 (Fed. Cir. 2004) (aff'd in part and vac'd in part on other grounds). By defaulting, the Defaulting Defendants have conclusively admitted that their infringement of the Asserted Patents is willful, deliberate, and egregious, mandating enhanced damages under 35 U.S.C. § 284. *See, e.g., J Blazek,* 2007 U.S. Dist. LEXIS 86281, 2007 WL 4191715, at *2 ("Therefore, by defaulting, Euro Expo admits that it has willfully infringed the Blazek Patents"). Additionally, a finding of willfulness is alone sufficient to support an award of increased damage. *See Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 628 (Fed. Cir. 1985).

The plaintiff had the initial burden to show the article of manufacture and the defendant's total profit on that article. *Nordock, Inc. v. Systems, Inc.,* No. 11-cv-118, 2017 U.S. Dist. LEXIS 192413, at * 7 (E.D. Wisc. Nov. 21, 2017). But, if the defendant believes that the article of manufacture is different, it has the burden to produce evidence showing the article of manufacture

13

and must also produce evidence as to any deductions from the total profit identified by the plaintiff. *Id.* The Seventh Circuit has clearly placed the burden of proving any costs or deductions on the defendant in similarly related cases involving trademark infringement:

> [t]he burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. There may well be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer.

*WMS Gaming, Inc. v. WPC Prods. Ltd.,* 542 F.3d 601, 608 (7th Cir. 2008).

Courts have since extended this burden to design patent defendants. "Although § 289 does not explicitly impose any burden on the defendant, this shift in the burden of production is consistent with the disgorgement of profits in other contexts." *Nordock, Inc.,* 2017 U.S. Dist. LEXIS 192413, at \*7-8. *See also In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 831 F. Supp. 1354, 1388 (N.D. Ill. 1993) ("[Patent holders] are entitled to an award best approximating their actual loss, and the infringers must bear the burden of uncertainty") (citations omitted). Accordingly, when defendants have failed to defend against an action and failed to produce documents to characterize revenue, several courts have entered a profits award for the entire revenue amount. *See, WMS Gaming, Inc. v. WPC Prods. Ltd.,* 542 F.3d 601, 608 (7th Cir. Ill. 2008) (calculating profits under the Lanham Act); *Chloe v. Queen Bee of Beverly Hills*, No. 06-civ-3140 (RJH)(MHD), 2009 U.S. Dist. LEXIS 84133, at \*15-17 (S.D.N.Y. Jul. 16, 2009) (same); *Evriholder Prods. LLC v. Simply LBS Co.,* 2020 U.S. Dist. LEXIS 71936, at \*2-25 (S.D.N.Y. April 21, 2020) (awarding gross profits against defaulting design patent defendant who failed to prove any costs or deductions and collecting cases).

Since Defaulting Defendants have chosen not to participate in these proceedings, Plaintiff has limited information regarding Defaulting Defendants' profits from the sale of Infringing

14

Products. Since Defaulting Defendants have not produced any documents or information: (1) characterizing each of the transactions in their financial accounts, (2) identifying other accepted payment methods, or (3) disclosing other Internet stores that they may be operating. As such, Defaulting Defendants have not met their burden to apportion gross receipts between infringing and non-infringing product sales, or to show any deductions. *WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008); *Nordock, Inc. v. Systems, Inc.,* 2017 U.S. Dist. LEXIS 192413, at * 7. It should further be noted that each Defaulting Defendant's Seller ID is a standalone website selling only one product – the product that infringes Plaintiff's Asserted Patents. Plaintiff's requested damages against Defendants are based on the sales data provided by PayPal and Stripe for accounts connected to the Seller IDs. *See* Mitchell Decl. ¶ 4.

The awarding of damages under 35 U.S.C. § 289 serves dual interests in that it is remedial in nature but is also intended to protect an important public interest in deterring patent infringement and protecting consumers. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize counterfeiters and try to deter future violations. Plaintiff is entitled to the total profit made by Defaulting Defendants from their infringement of the Asserted Patents, but no less than $250. The evidence conclusively demonstrates that Defaulting Defendants have made substantial profits through their willful and deliberate infringing activities.

Because of these reasons, Plaintiff elects to pursue total revenue from Defaulting Defendants pursuant to 35 U.S.C. § 289.

B.    **Plaintiff is Entitled to Enhanced Treble Damages Pursuant to 35 U.S.C. § 284.**

35 U.S.C.S. § 284 allows district courts to punish the full range of culpable behavior with an exercise of discretion to award enhanced damages of up to three times of the actual damages. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 97 (2016). Even though "such punishment should generally be reserved for egregious cases typified by willful misconduct," "none of this is to say that enhanced damages must follow a finding of egregious misconduct." *Id*. at 94. This district court has awarded treble damages to plaintiffs when defendants defaulted in patent cases and plaintiffs have alleged willful patent infringement. ("The Complaint, taken as true, establishes that the Schedule A 'Defendants [were] actively participating in a conspiracy to distribute and sell Infringing Products.'" *Aquapaw Brands LLC v. Pusifica*, Civil Action No. 23-cv-538, 2025 LX 341599, at *19 (W.D. Pa. Aug. 12, 2025).

Here, Plaintiff has alleged that the Defendants' infringement of Plaintiff's patents has been willful Complaint ¶¶ 1, 40, 43, 57, 60-61, 69, 73. As alleged in the Complaint, the Defendants were aware of Plaintiff's Products, and patents, and attempted to evade liability through sophisticated concealment tactics, including but not limited to, masking their true identities, orchestrating complex networks of shell companies, and implementing automated systems to rapidly change their online presence – all while knowingly and willfully continuing their infringing activities, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their products and listings. *See* Complaint ¶ 39. The Defendants deliberately created deceptive online stores to sell unauthorized versions of Plaintiff's Patented Products as if they were genuine, despite never having sought or received any form of permission, license, or authorization from Plaintiff. *Id*. at ¶ 40. The Infringing Products sold by the Defendants were comprised of breathing devices that are either identical to or

16

substantially similar to those claimed in the '195 Patent and embodied by Plaintiff's Products, and the Infringing Products included each and every element of at least independent claims 1-7 of the '195 Patent, either literally or under the doctrine of equivalents, demonstrating that the Defendants were aware of Plaintiff's products and willfully infringed on Plaintiff's Patents. *Id*. at ¶ 43. These allegations are taken as true. Therefore, all defaulting Defendants have willfully infringed on Plaintiff's Patents.

### C.     Plaintiff Is Entitled to Permanent Injunctive Relief.

Plaintiff further requests entry of a permanent injunction enjoining Defaulting Defendants from making, using, offering for sale, selling, and importing any product embodying the design claimed in Plaintiff's Asserted Patents, or any colorable imitation thereof. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc). Without such injunctive relief, Plaintiff would suffer irreparable harm, including loss of market share, price erosion, and damage to reputation and goodwill that cannot be adequately compensated by monetary damages alone. The ongoing nature of Defaulting Defendants' infringement threatens to cause continuing and incalculable harm to Plaintiff's business and patent rights. Plaintiff further requests that any Permanent Injunction entered by the Court order that Defaulting Defendants' assets that are currently restrained shall be immediately transferred to Plaintiff up to the full amount of monetary relief granted by this Court. Plaintiff also requests that any Permanent Injunction entered by the Court require transfer to Plaintiff of all assets owned by Defaulting Defendants that may be discovered in the future, up to the amount of monetary relief awarded herein, including assets held in subsequently discovered accounts or under different names.

Such injunctive relief is necessary and appropriate to enable Plaintiff to expeditiously take action against any new websites, online marketplace accounts, or other sales channels identified

and that are determined to be linked to, controlled by, or used to sell Defaulting Defendants' Infringing Products. *See Entertainment One UK Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 19-cv-00788, Dkt. 30 (Default Judgment Order) at 5, § 7 (N.D. Ill. Apr. 23, 2019) (ordering that Plaintiff shall have ongoing authority to serve the Order upon financial institutions in the event that new accounts owned by the Defaulting Defendants are identified, until the full damages award has been satisfied); *Levi Strauss & Co. v. 932HK-5Z4WQX, et al.,* No. 19-cv-00281, Dkt. 46 (Final Judgment Order), at 8-9, § 6 (N.D. Ill. Apr. 2, 2019) (same).

V.    **CONCLUSION.**

Plaintiff respectfully requests that the Court enter default and default judgment against Defaulting Defendants and award monetary damages jointly and severally against Defaulting Defendants in the amount of $4,036,584.29, which is enhanced to $12,109,752.90 due to the willful and egregious nature of the infringement, pursuant to 35 U.S.C. §§ 283, 284, and 289 based on Defaulting Defendants' revenue and profits generated as a result of their infringement of Plaintiff's Asserted Patents. Plaintiff further requests entry of a permanent injunction enjoining Defaulting Defendants from making, using, offering for sale, selling, and importing any product embodying the design claimed in the Asserted Patents or any colorable imitation thereof; and requiring the transfer to Plaintiff of assets in Defaulting Defendants' financial accounts, including, without limitation, Defaulting Defendants' bank accounts and Defaulting Defendants' payment accounts operated by on-line marketplaces, including but not limited to PayPal, Stripe, and any other payment processing services, up to the amount of any monetary relief ordered by the Court.

Date: September 29, 2025

Respectfully submitted,

By: <u>/s/ Michael Mitchell</u>
Michael Mitchell IL #6324363
Shengmao (Sam) Mu NY #5707021
Abby Neu IL #6327370
Keaton Smith IL #6347736
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: mmitchell@whitewoodlaw.com

*Counsel for Plaintiff*

**SCHEDULE A**

| DOE # | Seller Name | Sales Revenue | Default Award |
|:---:|:---:|:---:|:---:|
| 1 | noluva | $141,746.37 | $141,746.37 |
| 2 | vslyn | $12,483.71 | $12,483.71 |
| 3 | freshinhale | No data | $250 |
| 4 | thebreathlink | $1,059,683.01 | $1,059,683.01 |
| 5 | auraliashop | $1,794,575.73 | $1,794,575.73 |
| 6 | joincircle | $514,649.75 | $514,649.75 |
| 7 | breathlink | $177,633.53 | $177,633.53 |
| 8 | EXCEPTED | EXCEPTED | EXCEPTED |
| 9 | breathlace | $225,523.76 | $225,523.76 |
| 10 | breath-lace | No data | $250 |
| **Total** | | | **$3,926,795.86** |
| **Treble** | | | **$11,780,387.58** |